NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES,<br><br>　　　　Plaintiff,<br><br>v.<br><br>KASTLER CHERISME,<br><br>　　　　Defendant. | **Criminal Action No. 17-431 (SRC)**<br><br>**OPINION** |

**CHESLER**, District Judge

　　This matter comes before the Court on the motion filed by Defendant Kastler Cherisme ("Defendant"), to suppress evidence allegedly discovered in connection with his June 24, 2017 arrest as the fruits of an unconstitutional stop and seizure, and which seeks an evidentiary hearing and various discovery in aid of that motion. The United States of America (the "Government") opposes this motion. The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons that follow, Defendant's motion to suppress and in aid of discovery is denied in part and granted in part.

**I.　FACTUAL BACKGROUND**

　　This action concerns a one-count Indictment stemming from Defendant's June 24, 2017 arrest. The Indictment charges that Defendant, having been convicted of a crime punishable by imprisonment for a term exceeding one year in a court in the State of New Jersey, knowingly possessed a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). This motion principally concerns whether the warrantless search of Defendant's car when he was stopped by

1

police on the evening of June 24, 2017, was supported by reasonable suspicion, as required by the Fourth Amendment.

At approximately 5:00 p.m. on June 24, 2017, three plainclothes Newark Police Officers — Sergeant Neil Laurie, Police Officer Joyce Brea ("Officer Brea"), and Police Officer Marquis Brock ("Officer Brock") — received a tip from an anonymous citizen "that there is a black Crown Victoria bearing New Jersey license plate (T42HMR), in the area, and the male driver, who is heavy set with a beard, has drugs and a handgun in his possession at all times." ECF 21-1 at 6. Shortly after receiving this tip, the officers saw the car identified by the anonymous informant, driven by Defendant, going eastbound on Mt. Vernon Place. The officers pulled behind the vehicle and followed it for two blocks. According to the police report, the officers noticed all of the car windows were closed and darkly tinted. Once the vehicle turned southbound onto Ellery Avenue, the officers activated their lights and sirens to instruct the driver to stop, in an attempt to effect a motor vehicle stop and investigate further. Officer Brock then approached the vehicle on the driver's side, and instructed the Defendant to roll down all of the windows for officer safety, while Officer Brea approached from the passenger side. After Defendant rolled down the windows, the officers state a strong odor of raw marijuana began to emanate from the vehicle. As Officer Brea approached the open passenger-side window, she states she saw Defendant "leaning toward the passenger side and quickly attempt to cover an open black backpack located on the floorboard." ECF No. 22 at 11. Officer Brea states that at this time, she was able to see inside the open and unzipped backpack, and observed "a clear bag containing red tinted zip-loc baggies of a green leafy substance that [she] identified as suspected CDS marijuana." Id. Defendant was then immediately removed from the vehicle and placed under arrest; the officers conducted a search incident to arrest of Defendant which yielded

additional illegal narcotics.[1] Officer Brea thereafter retrieved the backpack from the vehicle, wherein she observed "a silver handgun located under the backpack on the floorboard of the vehicle." Id. The handgun was loaded "with fifteen (15) live rounds in the magazine, seven (7) of which were hollow point bullets." Id. Defendant was then transported to the police precinct.

**II.    DISCUSSION**

**A.  DEFENDANT IS NOT ENTITLED TO AN EVIDENTIARY HEARING**

"Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure permits defendants to file 'motions to suppress evidence' before trial, but evidentiary hearings on such motions are not granted as a matter of course. See Rule 12(c) (the court 'may' schedule a motion hearing)." United States v. Hines, 628 F.3d 101, 105 (3d Cir. 2010). "A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to show that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." United States v. Rashid, 593 F. App'x 132, 133 n.2 (3d Cir. 2014) (citing United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996)).

> At bottom, the purpose of an evidentiary hearing in the context of a suppression motion is to assist the court in ruling upon a defendant's specific allegations of unconstitutional conduct— its purpose is not to assist the moving party in making discoveries that, once learned, might justify the motion after the fact. To require an evidentiary hearing, a defendant's suppression motion therefore must set forth and identify for the court specific and concrete "issues of fact material to the resolution of the defendant's constitutional claim."

Hines, 628 F.3d at 105 (quoting Voigt, 89 F.3d at 1067).

Defendant moves to suppress the handgun on the grounds that this evidence was obtained in an unreasonable seizure and search of his vehicle, in violation of the Fourth Amendment. A

---

[1] The Court notes that at approximately 5:05 p.m. on June 24, 2017, the day of his arrest, Defendant was issued a ticket for his illegally tinted windows, in violation of N.J.S.A. 39:3-75.3A. See ECF No. 22 at 26.

3

defendant who files a motion to suppress bears the burden of establishing, by a preponderance of the evidence, that his Fourth Amendment rights were violated. See United States v. Acosta, 965 F.2d 1248, 1257 n. 9 (3d Cir. 1992).

Third Circuit law makes clear that the movant has to come forward with disputed material facts in order to warrant an evidentiary hearing. Here, Defendant fails to point to any material facts in dispute in order to warrant an evidentiary hearing, as Defendant's sole factual assertion is based upon challenging the narrative of the police report and related documents. In effect, Defendant challenges the veracity of the information without providing any basis for challenging the veracity. There has been nothing submitted by Defendant which in any way controverts the information contained in those reports. Therefore, the question for the Court is whether or not the information discloses a sufficient basis for the Court to conclude if there is a dispute over real factual issues which are required for the Court's determination. As will be discussed more in-depth infra, a review of the record indicates there is none. Because there is no evidence to controvert that Defendant's car had darkly tinted windows in violation of New Jersey state law, N.J.S.A. 39:3-75, which indisputably provided an objective basis for the officers to make the traffic stop, Defendant has failed to show the existence of a material dispute of fact capable of resolution at an evidentiary hearing. Under these circumstances, the Court has no controverted facts to decide. Accordingly, the Court denies Defendant's request for an evidentiary hearing on the motion to suppress.

A. INITIATION OF THE TRAFFIC STOP

The Fourth Amendment guarantees an individual's freedom from "unreasonable government intrusion." Terry v. Ohio, 392 U.S. 1, 9 (1968). It "applies to seizures of the person, including brief investigatory stops . . . ." United States v. Cortez, 449 U.S. 411, 417 (1981). In

Terry v. Ohio, the Supreme Court articulated the justification required under the Fourth Amendment to conduct such an investigatory stop and limited search of the detained person. It requires reasonable suspicion by a police officer "that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous . . . ." Terry, 392 U.S. at 30. Reasonable suspicion exists when the officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." Cortez, 449 U.S. at 417-18. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting Cortez, 449 U.S. at 418). To make a reasonable suspicion determination, the Court must consider the totality of the circumstances. Id. Thus, the Court must determine, under the totality of the circumstances, whether the officers had a reasonable suspicion that a crime was being committed to justify the stop of Defendant's vehicle.

"Traffic stops are classified as a type of Terry stop, and may be initiated based on a reasonable suspicion that a traffic violation has occurred." United States v. Green, 897 F.3d 173, 178 (3d Cir. 2018) (citing Navarette v. California, 572 U.S. 393, 134 S. Ct. 1683, 1686 (2014); United States v. Delfin-Colina, 464 F.3d 392, 396-97 (3d Cir. 2006) (adopting reasonable suspicion, not probable cause, as the applicable standard)).

Defendant argues that the stop of his vehicle was unlawful because the anonymous informant's uncorroborated tip, that Defendant possessed both a gun and illegal narcotics, was insufficient to justify the investigatory stop of Defendant's vehicle. In determining whether the traffic stop was constitutional, the Third Circuit has stated that our courts should "only look to whether specific, articulable facts produced by the officer would support reasonable suspicion of

a traffic infraction." United States v. Johnson, 434 F. App'x 159, 162 (3d Cir. 2011) (citing Delfin-Colina, 464 F.3d at 398) (internal quotation marks omitted). The Court finds that in this case, the officers had the requisite reasonable suspicion to stop Defendant's vehicle. Defendant's argument that the stop was potentially pretextual is immaterial, as there is not the slightest indication that the officers did not have the basis to conclude the car windows were not tinted in violation of New Jersey traffic laws. "It has long been axiomatic that a traffic violation arrest . . . [is not] rendered invalid by the fact that it was a mere pretext for a narcotics search." Green, 897 F.3d at 178 n.3 (citing Whren v. United States, 517 U.S. 806, 812-13 (1996)) (internal citation marks omitted).

Third Circuit law makes it clear that although there may have been an additional motive for stopping the car, or indeed, whether this vehicle violation was merely a pretext for the stop is irrelevant if the officers had objective indicia that Defendant's vehicle was in fact violating New Jersey's vehicle laws. Irrespective of whether the anonymous informant's tip was sufficiently corroborated, the officers' observation of the car's darkly tinted windows constituted a reasonable and articulable suspicion that Defendant was in violation of N.J.S.A. 39:3-75, which provides a lawful basis for the stop. See Johnson, 434 F. App'x at 162 (stating that "[t]he Supreme Court [has] established a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime") (citing United States v. Petersen, 622 F.3d 196, 201 (3d Cir. 2010)); see also United States v. Mosley, 454 F.3d 249, 252 (3d Cir. 2006). Moreover, Defendant does not attempt to dispute that the windows were illegally tinted, and does not provide any basis for concluding that the tinting of the windows did not provide a reasonable and objective basis for the officers to believe that there was a violation of the applicable motor vehicle laws. Indeed, Defendant actually received a

ticket for the tinted windows. See ECF No. 22 at 16. Whether the officers intended to investigate on the basis of the anonymous informant's tip is thus immaterial, as the officers had a separate, objective and reasonable suspicion to perform the motor vehicle stop on the basis of Defendant's illegally tinted windows. Accordingly, Defendant's motion to suppress is denied.

### B. DISCOVERY IN AID OF THE MOTION TO SUPPRESS

Defendant additionally seeks discovery in aid of the motion to suppress, as follows:

> [s]pecifically, he requests an order requiring the government: (1) to produce for in camera review the personnel files of law enforcement officers, or individuals acting under color of authority, involved in the case; (2) to preserve and produce all rough notes created by any and all law enforcement agencies and government witnesses in the course of the investigation leading to the indictment; (3) to produce all Jencks Act materials; and (4) to produce exculpatory evidence in accordance with the Court's standing Order for Discovery and Inspection. Finally, he seeks the entry of an order permitting him to file additional pretrial motions if the indictment survives this challenge.

ECF No. 21-1 at 2.

The Court has denied Defendant's motion to suppress the evidence seized as a result of his June 24, 2017 arrest. Accordingly, to the extent that Defendant seeks discovery in aid of the motion to suppress, Defendant's request is denied as moot.

### C. ADDITIONAL DISCOVERY REQUESTED

Although Defendant frames the requested discovery as in aid of the motion to suppress, it appears that additional discovery requests are made in support of more general discovery issues. With regard to those requests, the Court finds as follows.

First, Defendant's request for production of personnel and/or internal affairs files of the police officers who participated in Defendant's arrest for *in camera* review is denied. "A defendant seeking an *in camera* inspection to determine whether files contain Brady material must at least make a 'plausible showing' that the inspection will reveal material evidence." Riley

7

v. Taylor, 277 F.3d 261, 301 (3d Cir. 2001) (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 58 n.15 (1987)). At this time, Defendant has failed to sufficiently make such a showing. Nevertheless, the Government is reminded of its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, and the Court expects the Government to comply with Brady's mandate.

Second, Defendant's request to compel the Government to preserve rough notes of police officers involved in this matter is denied. However, the Court likewise expects the Government is aware of its obligation to preserve such material for possible future production.

Third, with regard to the production of Jencks Act materials, the Court acknowledges that 18 U.S.C. § 3500 does not require the production of Jencks Act materials until after a Government witness has testified. See 18 U.S.C. § 3500(b); United States v. Maury, 695 F.3d 227, 248 (3d Cir. 2012). Thus, Defendant's request to compel early disclosure of Jencks material is denied. However, the Court nevertheless encourages the Government to provide such materials in a timely manner so that there is no delay in the orderly presentation of witness testimony.

Finally, with regard to Defendant's request for permission to file additional motions in the future, the Court will entertain such motions if they are appropriate and timely made. Accordingly, Defendant's request for permission to file additional pre-trial motions is granted, subject to the conditions set forth above.

**III.  CONCLUSION**

For the foregoing reasons, Defendant's motion to suppress is denied. Defendant's motion for discovery in aid of the motion to suppress is denied as moot. Defendant's remaining motion for discovery is granted in part and denied in part. An appropriate Order accompanies this Opinion.

 s/Stanley R. Chesler  
STANLEY R. CHESLER  
United States District Judge

Dated:  November 29, 2018